UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Keith A. Putnam, individually,
doing business on behalf of
Keith Putnam Trucking, and on
behalf of all others similarly
situated,

Plaintiff,

vs.                                                       REPORT AND RECOMMENDATION

Olympic Transport, Inc.,

Defendant.                      Civ. No. 06-2149 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion for Entry of a Default Judgment,

and Order, Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure.  A Hearing

on the Motion was conducted on December 28, 2006, at which time, the Plaintiff

appeared personally, and by James C. Hardman, Esq., and no appearance was made

by, or on behalf of, the Defendant.  For reasons which follow, we recommend that a Judgment of Default be entered against the Defendant.[1]

## II. <u>Jurisdiction</u>

1.      The Plaintiff is an individual resident of Minnesota, who does business as Keith Putnam Trucking, and who leased a motor carrier tractor, with driver services, to the Defendant, during the period from June 15, 2005, to September 30, 2005.  The Defendant is a federally-regulated motor carrier, which provided motor carrier service in interstate commerce.

2.      The relationship between regulated motor carriers, and individuals or entities, such as the Plaintiff, is regulated by the Department of Transportation ("DOT").  See, <u>Title 49 U.S.C. §14102 and 49 C.F.R. Part 376</u>.

3.      The Plaintiff alleges that the Defendant's "Master Agreement" lease failed to include various terms, which are required by the Federal Administrative Regulations, and that other portions of the Master Agreement conflict with other legally required terms, and as a result, the Plaintiff suffered monetary damages for which he should be

---

[1]At the Hearing, the Plaintiff stated that he was not pursing any claims on behalf of any putative class members, and that he was withdrawing a request that his Complaint be construed as a putative class action.

compensated.  The Plaintiff also asserts that an injunction would serve the purposes of the Federal Leasing Regulations, because it would help promote full disclosure, eliminate opportunities for the Defendant to engage in illegal, and/or inequitable practices, and promote the stability and economic welfare of similarly situated owner-operators.

4.     The cause of action, that the Plaintiff alleges, arises under Title 49 U.S.C. §§14102 and 14704(a)(1) and (2), which authorizes a private action for injunctive relief, and for damages, arising from violations of 49 C.F.R. Part 376.

5.     Jurisdiction for this action arises under Title 28 U.S.C. §§1331 (Federal Question Jurisdiction), and 1337 (proceedings arising under an act of Congress regulating commerce).

6.     Jurisdiction over the Defendant has been effected by proper service on its self-appointed agent for service of process in Minnesota.  See, Docket No. 6.

7.     Venue is proper in this Court, based upon the Plaintiff's residency in the State of Minnesota, and numerous significant contacts between the Plaintiff and the Defendant, as well as the conduct of Defendant's business in this State.

III.  Findings of Fact

On the basis of the evidence adduced at the Hearing in this matter -- namely, the Plaintiff's own testimony, and his Affidavit -- the following facts are established:

1.      The Plaintiff is a citizen of the State of Minnesota, and is an owner-operator who has leased a motor carrier tractor, with driver services to the Defendant, within the purview of Title 49 U.S.C. §14102.

2.      The Defendant is authorized under Federal law to conduct business in the contiguous forty-eight (48) States, including the State of Minnesota.  The Defendant is a regulated motor carrier, which provides transportation services to the shipping public, under authority granted by the DOT.  During all times material to this case, the Defendant is, and has been, an "authorized carrier" within the meaning of 49 C.F.R. §376.2(a).

3.      The Plaintiff, and the Defendant, entered into a federally-regulated lease (the "Master Agreement") on June 15, 2005.

4.      Pursuant to the Master Agreement, the Plaintiff hauled automobiles between various points in the United States, including loads from, to, or through, the State of Minnesota, until September 30, 2005, at which time the Plaintiff terminated the Master Agreements because of violations involving untimely payments for hauling, as

- 4 -

well as miscellaneous interpretations of the Master Agreement which were made by the Defendant.

5.      The Master Agreement, and the relationship between the Plaintiff and the Defendant, were subject to explicit Federal Regulations, as published in 49 C.F.R. Part 376, pursuant to Title 49 U.S.C. §14102, which not only specifically dictate that the lease between the Plaintiff and Defendant contain specified provisions, but which also mandate compliance with those provisions. See, 49 C.F.R. 376.11.

6.      When the Plaintiff ceased the leasing relationship with the Defendant, he was owed a minimum of $4,265.00 in revenues on loads handled under the Master Agreement for movements.[2]

7.      That Plaintiff was entitled, under 49 C.F.R. 376.12(f), to receive payment for the loads, which were carried within fifteen (15) days after the submittal of the driver logs and documents, that are needed to bill shippers, and which were timely submitted, but the Defendant withheld payments, consistently, for longer periods after those submittals, and the Plaintiff was not paid interest on those late payments.

---

[2]Although the Plaintiff has not provided any corroborating documentation to verify that he was owed $4,265.00 in unpaid compensation for various loads he transported, we credit his sworn testimony and averments, in the absence of any opposing argument or evidence.

8.      The Defendant denied timely payment of revenue, or provided no revenue to the Plaintiff, on the basis that shippers did not pay, or timely pay, the Defendant its freight charges.

9.      The Plaintiff was also required by the Defendant to carry, and pay, $1,402.77 in premiums for workers' compensation insurance on himself, purely on the representation of the Defendant that the State of Indiana required such coverage, even though such coverage for owner-operators, such as the Plaintiff, was exempted under the applicable State Statute, see, Indiana Code Title 22, Art. 3, Chapter 6, §1(8).

10.     The Plaintiff was also charged for public liability and cargo insurance, in the amount of $2,810.78, although the Defendant, and not the Plaintiff, was named as the "insured" on the Certificate of Insurance.

11.     The Plaintiff was forced, by the Defendant, to advance $2,316.47 as a deposit for the insurance acquired through the Defendant, and that amount was not returned to the Plaintiff, notwithstanding repeated requests, when the Master Agreement was cancelled, and interest was never paid on the advanced funds.[3]

---

[3]The Plaintiff's Affidavit, see, Affidavit of Keith Putnam, Docket No. 7-2, at ¶6(f), avers that the Defendant required a deposit of $3,316.47 for insurance premiums. However, at the Hearing, the Plaintiff testified that the actual amount of the deposit was

(continued...)

12.     The Plaintiff was not provided a choice as to the writer of the insurance he acquired, nor any opportunity to negotiate the premium's cost, but his participation was subject to a written statement, by the Defendant, which set forth "Drivers Startup Fees and Requirements."

13.     The Plaintiff was charged an "administrative fee" of ten percent (10%) of the freight revenue that was otherwise due to the Plaintiff, but without any explanation of the service that the fee covered, despite the requests by the Plaintiff for such an explanation. During the term of the Master Agreement, this fee accumulated to $4,806.13.[4]

14.     Review of the Master Agreement indicates that the document did not:
   (a)     recite an unqualified obligation to provide the Plaintiff with documents to substantiate chargebacks as required by 49 C.F.R. §376.12(h);

---

[3](...continued)
$2,316.47, which is also the amount that was required by the terms of the Master Agreement. See, Id., Exh B., at p. 3. Accordingly, we credit the Plaintiff's testimony that $2,316.47 is the proper amount for purposes of calculating damages.

[4]In his Affidavit, the Plaintiff avers that he was charged $4,806.73 in administrative fees which, he contends, is contrary to the Federal Truth-in-Leasing regulations. However, the Exhibit admitted into evidence, at the Hearing, provides that the Plaintiff was actually charged $4,806.13.  Given the relatively small difference in the stated amounts, we presume that the amount stated in the Affidavit was the result of a typographical error, and we utilize the figure computed, and provided, in the Plaintiff's Exhibit D.

(b)     specify that the Plaintiff would be provided with a Certificate of Insurance for each policy he purchased through the Defendant or indicate a policy would be available upon request as required by 49 C.F.R. §376.12(j)(2);

(c)     specify that, when deductions for cargo loss or damages were to be made from the Plaintiff's compensation, a written explanation and designation of those deduction would be given to the operator before deductions were made as required by 49 C.F.R. §376.12(j)(3);

(d)     make it obligatory upon the Defendant, pursuant to 49 C.F.R. §376.12(f), to pay the Plaintiff for hauling automobiles within fifteen (15) days of shipment and submittal of logs and documents necessary to bill shippers;

(e)     treat insurance deposits as escrow funds under 49 C.F.R. §376.2(l) and disposition and handling of such funds governed by 49 C.F.R. §376.12(k), including the right to demand an accounting at any time; the requirement that specified interest be paid on the escrow funds; and also that escrow funds would be returned timely at the conclusion of the Master Agreement.

IV.  Conclusions of Law

1.     Jurisdiction and venue is proper under the application of statutory provisions previously cited, and as interpreted in Owner-Operator Independent Drivers Ass'n v. New Prime, Inc., 192 F.3d 778 (8th Cir. 1999), cert. denied, 529 U.S. 1066 (2000).

2.     Service was properly made upon the Defendant, and a default was properly entered.

3.     The Defendant was a motor carrier registered under Federal law, and subject to the regulatory provisions of 49 C.F.R. Part 376, as an "authorized carrier" within the meaning of 49 C.F.R. §376.2(a), in its dealing with the Plaintiff, who was a "lessor" under 49 C.F.R. §376.2(f).

4.     The applicable statutory provisions, see, Title 49 U.S.C. §§14704(a)(1), (a)(2), and (e), provide that a private individual may bring a suit for the issuance of an injunction, damages, and costs, including reasonable attorney fees.  See, Owner-Operator Independent Drivers Ass'n., Inc. v. New Prime, Inc., supra at 785.

5.     As to the Plaintiff's request for injunctive relief, which would rescind any Master Agreements that the Defendant has entered with any non-parties, the Plaintiff has testified that he is no longer subject to the provisions of the Master Agreement,

and no longer maintains, or is likely to enter, a relationship with the Defendant. Furthermore, the Plaintiff represents that he is no longer pursuing this action as a putative class action. Accordingly, we find that the Plaintiff's request for injunctive relief is moot.

6.     The various, specific violations of the "Truth in Leasing Regulations," Leasing and Interchange of Equipment, 49 C.F.R. Part 376, which have been cited by the Plaintiff, and the conduct of Defendant, relating to the business lease relationship, evidences that the purposes of the Regulations, to promote full disclosure, eliminate opportunities for motor carriers, such as the Defendant, to engage in illegal and/or inequitable practices, and to promote the stability and economic welfare of owner-operators, see, Lease and Interchange of Vehicles, <u>131 M.C.C. 141, 142</u> (1979), were violated.

7.     The Plaintiff, through testimony adduced at the Hearing, as well as provided by Affidavit, has established that he has been damaged by the Defendant, and by the Defendant's application, or misapplication of the Master Agreement, including violations of the Federal Leasing and Interchange Regulations in the following respects:

- 10 -

(a)    Failure to be paid a total of $4,265.00 in operating revenue due under the "Compensation Agreement" provisions of the Master Agreement;

(b)    Failure to return a total of $2,316.47 in escrow funds, which were held by the Defendant as insurance security deposits;

(c)    Improper deductions for workers' compensation insurance premiums, which were not provided for under the Master Agreement, and inconsistent with the status of the Plaintiff as an independent contractor and under Indiana law, in the amount of $1,402.77; and

(d)    Improper deductions for liability, and cargo insurance, in the amount of $2,810.78, contrary to the Master Agreement and the Federal Leasing and Interchange Regulations.

(e)    Improper deductions for administrative fees in the amount of $4,806.13, contrary to the Master Agreement and the Federal Leasing and Interchange Regulations.

8.    The Plaintiff expended the amount of $350.00 in filing this lawsuit, including a request for a Jury Trial, as well as $44.00 for service of process costs which are to be awarded.

9.    The Plaintiff's attorney has filed an Affidavit, which requests legal fees, in the amount of $10,541.25, which should be awarded as costs, pursuant to Title 49

U.S.C. §14704(e), and be taxed as part of the costs of this action.  We find those fees to be reasonable for the work performed, when viewed in the context of the generally prevailing rates for attorney's fees within this community, as well as the work involved.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Plaintiff's Motion for Default Judgment [Docket No. 5] be granted.

2.     That the Plaintiff Keith A. Putnam, individually, doing business on behalf of Keith Putnam Trucking, be awarded against Defendant Olympic Transport, Inc., the sum of $15,995.15 in monetary damages, and reimbursement of court and service fees; and reasonable attorney fees, in the amount of $10,541.25; and with post-judgment interest.

3.     That the Plaintiff's request for injunctive relief be denied.

Dated: April 19, 2007          s/Raymond L. Erickson

                               Raymond L. Erickson
                               CHIEF U.S.  MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 4, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 4, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.